UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KATHERINE FLEMING, EDWARD R. HADUCK, and VICTORIA WENDEL,<br><br>     Plaintiffs,<br><br>v.<br><br>FIDELITY MANAGEMENT TRUST COMPANY, FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC.,<br><br>     Defendants. | | Civil Action No. 16-10918-ADB<br><br>**Oral Argument Requested** |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT UNDER FED. R. CIV. P. 12(b)(6) AND MEMORANDUM
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS BROKERAGELINK
CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION
UNDER FED. R. CIV. P. 12(b)(1)**

James R. Carroll (BBO #554426)
Michael S. Hines (BBO #653943)
SKADDEN, ARPS, SLATE
MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
michael.hines@skadden.com

Alison V. Douglass (BBO #646861)
Jaime A. Santos (BBO #689946)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
adouglass@goodwinlaw.com
jsantos@goodwinlaw.com

*Attorneys for Defendants*

Dated: November 3, 2016

i

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

I.      Plaintiffs' Fiduciary Breach Claim Concerning Fidelity's Compensation from FE
        (Count I) Fails Because Fidelity Has No Fiduciary Responsibility for Its
        Compensation from FE. ..........................................................................................2

        A.      The Delta TA Is Crystal Clear that Delta, Not Fidelity, Hired FE. ........................3

        B.      Plaintiffs' Fiduciary Claim Concerning Fidelity's FE Compensation Fails
                as a Matter of Law. ...............................................................................................5

II.     Plaintiffs' Fiduciary Breach Claim Concerning Fidelity's BrokerageLink Product
        (Count III) Fails Because a Service Provider Is Not a Fiduciary for the Design of
        Its Products, and Plaintiff Fleming Lacks Standing To Assert Such a Claim. ...................7

        A.      Dismissal Is Appropriate Under Leimkuehler and Santomenno. ...........................8

        B.      Plaintiffs Fail to Plausibly Plead Their Theory that Fidelity Selects Share
                Classes for Participants. .......................................................................................9

        C.      The Complaint's BrokerageLink Claims Should Be Dismissed for the
                Independent Reason that Plaintiffs Lack Standing To Assert These Claims.........10

III.    Plaintiffs' Prohibited Transaction Claims Should Be Dismissed for Failure to Plead
        Essential Elements of Those Claims.................................................................................13

        A.      Plaintiffs' Fiduciary Prohibited Transaction Claims Under § 406(b)
                (Counts I and III) Fail Because Fidelity Is Not a Fiduciary as to the
                Challenged Conduct..............................................................................................13

        B.      Plaintiffs' Non-Fiduciary Prohibited Transaction Claims Under § 406(a)(1)
                (Counts II and IV) Fail as a Matter of Law. .........................................................15

                1.      Plaintiffs' Non-Fiduciary Claim in Count II Fails....................................17

                2.      Plaintiffs' Non-Fiduciary Claim in Count IV Fails. .................................18

CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Animal Welfare Inst. v. Martin*,
    623 F.3d 19 (1st Cir. 2010) ......................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................10

*Beddall v. State St. Bank & Tr. Co.*,
    137 F.3d 12 (1st Cir. 1998) .........................................................................................4

*Bennett v. Spear*,
    520 U.S. 154 (1997) ..................................................................................................12

*Charters v. John Hancock Life Ins. Co.*,
    583 F. Supp. 2d 189 (D. Mass. 2008) .....................................................................6, 9

*Chicago Bd. Options Exch., Inc. v. Conn. Gen. Life Ins. Co.*,
    713 F.2d 254 (7th Cir. 1983) .......................................................................................4

*Columbia Air Servs., Inc. v. Fid. Mgmt. Trust Co.*,
    No. 07-11344-GAO, 2008 WL 4457861 (D. Mass. Sept. 30, 2008) ...........................4

*Danza v. Fid. Mgmt. Trust Co.*,
    533 F. App'x 120 (3d Cir. 2013) ...........................................................14, 15, 16, 17, 18

*Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.*,
    805 F.2d 732 (7th Cir. 1986) .......................................................................................9

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
    777 F. Supp. 2d 869 (E.D. Pa. 2011) ........................................................................19

*Eggert v. Merrimac Paper Co. Leveraged Emp. Stock Ownership Plan & Trust*,
    311 F. Supp. 2d 245 (D. Mass. 2004) .......................................................................12

*In re Fidelity ERISA Float Litig.*,
    829 F.3d 55 (1st Cir. 2016) ..................................................................................15, 17

*Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*,
    493 U.S. 331 (1990) ..................................................................................................11

*Glass Dimensions, Inc. v. State St. Bank & Trust Co.*,
    931 F. Supp. 2d 296 (D. Mass. 2013) .........................................................................6

iii

*Golden Star, Inc. v. Mass Mut. Life Ins. Co.*,
    22 F. Supp. 3d 72 (D. Mass. 2014) ..................................................................6

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) ........................................................................................20

*Haddock v. Nationwide Fin. Servs. Inc.*,
    419 F. Supp. 2d 156 (D. Conn. 2006) ..........................................................8, 15

*Harley v. Bank of New York Mellon*,
    No. 1:15-CV-1384, 2015 WL 6956564 (M.D. Pa. Nov. 10, 2015) .........................4

*Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*,
    961 F. Supp. 2d 393 (D. Conn. 2013) ..............................................................9

*Hernandez-Santiago v. Ecolab, Inc.*,
    397 F.3d 30 (1st Cir. 2005) ............................................................................12

*Hochendoner v. Genzyme Corp.*,
    823 F.3d 724 (1st Cir. 2016) ......................................................................11, 12

*Keach v. U.S. Trust Co.*,
    419 F.3d 626 (7th Cir. 2005) ..........................................................................16

*Kling v. Fidelity Mgmt. Trust Co.*,
    270 F. Supp. 2d 121 (D. Mass. 2003) ...............................................................4

*Leimkuehler v. Am. United Life Ins. Co.*,
    713 F.3d 905 (7th Cir. 2013) ..........................................................7, 8, 9, 10, 14

*Lewis v. Casey*,
    518 U.S. 343 (1996) ......................................................................................11

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996) .............................................................................16, 17, 18

*Lowen v. Tower Asset Mgmt., Inc.*,
    829 F.2d 1209 (2d Cir. 1987) .........................................................................14

*Luthy v. Proulx*,
    464 F. Supp. 2d 69 (D. Mass. 2006) ................................................................19

*McCaffree Fin. Corp. v. Principal Life Ins. Co.*,
    811 F.3d 998 (8th Cir. 2016) ...........................................................................4

*Merriam v. Demoulas Super Markets, Inc.*,
    Civ. A. No. 11-10577, 2012 WL 931347 (D. Mass. Mar. 20, 2012) ....................11

iv

*Nechis v. Oxford Health Plans, Inc.*,
   328 F. Supp. 2d 469 (S.D.N.Y. 2004) ...................................................................20

*Patelco Credit Union v. Sahni*,
   262 F.3d 897 (9th Cir. 2001) ...............................................................................16

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) .......................................................................................1, 14

*Pride Hyundai, Inc. v. Chrysler Fin. Co.*,
   369 F.3d 603 (1st Cir. 2004) ..................................................................................3

*Reich v. Rowe*,
   20 F.3d 25 (1st Cir. 1994) ....................................................................................19

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011) ...................................................................................2

*Santomenno v. John Hancock Life Ins. Co. (USA)*,
   768 F.3d 284 (3d Cir. 2014) ........................................................2, 4, 6, 7, 8, 9, 10

*Skin Pathology Assocs., Inc. v. Morgan Stanley & Co. Inc.*,
   27 F. Supp.3d 371 (S.D.N.Y. 2014) ......................................................................16

*Smart v. Gillette*,
   70 F.3d 173 (1st Cir. 1995) ....................................................................................4

*Tussey v. ABB, Inc.*,
   No. 2:06-CV-04305-NKL, 2012 WL 1113291 (W.D. Mo. Mar. 31, 2012) ...........8

*United States v. Glick*,
   142 F.3d 520 (2d Cir. 1998) ...................................................................................6

*Vander Luitgaren v. Sun Life Assurance Co. of Can.*,
   966 F. Supp. 2d 59 (D. Mass. 2012) ....................................................................19

*Warth v. Seldin*,
   422 U.S. 490 (1975) .............................................................................................11

**Statutes**

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

   29 U.S.C. § 1106(a) (ERISA § 406(a)) ........................................15, 16, 17, 18, 19, 20

   29 U.S.C. § 1106(a) (ERISA § 406(a)(1)) ................................................13, 15, 18

   29 U.S.C. § 1106(a)(1)(C) (ERISA § 406(a)(1)(C)) .........................................18, 19

29 U.S.C. § 1106(a)(1)(D) (ERISA § 406(a)(1)(D)) ........................................................17, 18

29 U.S.C. § 1106(b) (ERISA § 406(b)) ....................................................................13, 14, 15

29 U.S.C. § 1106(b)(1) (ERISA § 406(b)(1)) ..................................................................13, 15

29 U.S.C. § 1108(b)(2) (ERISA § 408(b)(2)) ........................................................................19

29 U.S.C. § 1131(a)(3) (ERISA § 501(a)(3)) ........................................................................19

29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) ..................................................................19, 20

**Regulations**

29 C.F.R. § 2550.408b-2 ...........................................................................................................8

**Rules**

Fed. R. Civ. P. 12(b)(1) ...................................................................................................1, 2, 10

Fed. R. Civ. P. 12(b)(6) ...............................................................................................1, 2, 3, 10

**Other Authorities**

Amendment Relating to Reasonable Contract or Arrangement Under
Section 408(b)(2)—Fee Disclosure/Web Page, 77 Fed. Reg. 41,678 (July 16, 2012) .............8

Dep't of Labor, Adv. Op. 2013-13A (July 3, 2013) ....................................................18

Dep't of Labor, Field Assistance Bulletin No. 2012-02R (July 30, 2012) ...................14

Edgewood Management LLC, Edgewood Growth Fund: Overview, (last accessed Nov. 3,
2016), http://edgewoodfunds.com/growth_fund......................................................10

Jesse Emspak, GOOG or GOOGL: Which Stock Do You Buy?, Investopedia.com (Mar. 25,
2016), http://www.investopedia.com/articles/markets/052215/goog-or-googl-which-
google-should-you-buy.asp...................................................................................10

Final Rule, Enhanced Disclosure and New Prospectus Delivery Option for Registered Open-
End Management Investment Companies,
74 Fed. Reg. 4,546, 4,551 (Jan. 26, 2009) ............................................................10

Morgan Stanley Investment Management, Morgan Stanley Institutional Fund 2Q16 Fact Sheet,
https://www.morganstanley.com/im/publication/mutualfund/factcard/fc_us_mf_usreal
estate.pdf ...........................................................................................................10

86066233

## INTRODUCTION

Defendants Fidelity Management Trust Company and Fidelity Investments Institutional Operations Company (collectively, "Fidelity") submit this Memorandum, which serves both as a Reply in Support of Fidelity's Motion to Dismiss Plaintiff's Complaint Under Fed. R. Civ. P. 12(b)(6) (ECF No. 23), and also as a Memorandum in Support of Fidelity's Motion to Dismiss Plaintiffs' BrokerageLink Claims For Lack of Subject Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1), filed concurrently herewith.  Pursuant to this Court's October 17, 2016 Order, and for the convenience of the Court, Fidelity files a single brief supporting both Motions.

Plaintiffs' Opposition confirms that dismissal is warranted here.[1]  The core deficiency in Plaintiffs' claims is that Fidelity had no fiduciary role in the Delta Plan's selection of Financial Engines ("FE") and BrokerageLink, and was not acting as a fiduciary when it designed BrokerageLink to include certain share classes of mutual funds.  The Trust Agreement that governs the relationship between Fidelity and the Delta Plan unambiguously provides that it was Delta that made the choice to make FE and BrokerageLink available to its plan participants.  Because Fidelity was not acting as a fiduciary regarding the Plan's decision to offer FE and BrokerageLink to its plan participants, Fidelity could not have breached a fiduciary duty in designing or establishing the terms on which those offerings would be made available.  A party can be liable for breach of fiduciary duty only if it "was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint*."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (emphasis added).  In the absence of a fiduciary duty, there can be no claim for breach of fiduciary duty.

---

[1] Capitalized terms herein have the same meaning as in the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint (Docket No. 24) ("Moving Brief," cited as "Mov. Br. at __").  Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Docket No. 28) is referred to as the "Opposition" (cited as "Opp. at __").

Although Plaintiffs do not dispute that the Court may consider the Delta TA, the Opposition ignores and misrepresents the plain language of that agreement.  It also attempts to misdirect the Court to inapposite cases in which a plan service provider's contract gave the service provider discretion to adjust its own compensation.  That is not the case here; nothing in the Delta TA gives Fidelity any such discretion.  Courts routinely dismiss claims where – as here – they are premised on allegations that are directly at odds with the plain language of the plan's trust agreement.  This case should similarly be dismissed under Rule 12(b)(6).

In addition to Plaintiffs' failure to state a claim under Rule 12(b)(6), Plaintiffs' claims concerning BrokerageLink suffer from a jurisdictional defect that mandates dismissal under Rule 12(b)(1):  Fleming, the only named plaintiff who is alleged to have utilized BrokerageLink, lacks standing to assert a claim challenging Fidelity's selection of share classes in BrokerageLink after plan participants choose a mutual fund to invest in, because she – and not Fidelity – selected the specific share classes in which she invested.  Accordingly, Defendants' accompanying Motion to Dismiss BrokerageLink Claims for Lack of Subject Matter Under Fed. R. Civ. P. 12(b)(1) should also be granted.

## ARGUMENT

### I.  Plaintiffs' Fiduciary Breach Claim Concerning Fidelity's Compensation from FE (Count I) Fails Because Fidelity Has No Fiduciary Responsibility for Its Compensation from FE.

Contrary to Plaintiffs' assertions (Opp. at 2, 9-10), courts routinely dismiss ERISA claims against plan service providers for failure to adequately plead fiduciary status, especially where – as here – (a) the relevant contract is clear that the provider had no discretionary authority, *e.g.*, *Renfro v. Unisys Corp.*, 671 F.3d 314, 323 (3d Cir. 2011) (affirming dismissal under Rule 12(b)(6) because the trust agreement made clear that Fidelity had no role in selecting the plan's investment options), or (b) the plaintiff's fiduciary theory fails as a matter of law, *e.g.*,

2

*Santomenno v. John Hancock Life Ins. Co. (USA)*, 768 F.3d 284, 297 (3d Cir. 2014) (affirming

dismissal under Rule 12(b)(6) because a 401(k) plan service provider is not a fiduciary with

respect to fees negotiated at arms' length).  Each ground provides an independent basis for

dismissal.

### A.    The Delta TA Is Crystal Clear that Delta, Not Fidelity, Hired FE.

The Opposition's attempt to salvage Count I hinges on a single assertion—that Fidelity

"hired" FE for the Delta Plan.  That assertion cannot stand in the face of unambiguous language

to the contrary in the controlling agreement establishing that Delta had sole discretion and

authority to appoint FE.

The Delta TA explicitly states that *Delta* – not Fidelity – appointed FE, and that such

appointment was pursuant to a contract between *Delta* and FE:

> "Professional Management" shall mean a discretionary investment management service
> provided by Financial Engines *in accordance with a financial service agreement between
> [Delta] and Financial Engines*. . . .

> [Delta] may also appoint an investment manager with respect to the Professional
> Management services, and, *pursuant to the financial services agreement between [Delta]
> and Financial Engines*, **[Delta] has so appointed Financial Engines** . . . .

Delta TA, Second Amendment, §§ 1(tt), 5(m) (emphases added).

Not only does the Delta TA expressly state that it is Delta that has retained FE, it also

states that Fidelity is *not* responsible for FE's retention, and, indeed, that Fidelity may not even

advise Delta in connection with that decision:

> The Trustee [Fidelity] shall have no responsibility for . . . the decision to offer
> Professional Management and shall not render investment advice to any person in
> connection with the selection of such . . . service.

Delta TA § 5(a); *accord* Delta TA, Second Amendment, § 2(a).  That language could not be

more clear – the decision to hire FE was Delta's, not Fidelity's.  As in any other case, Plaintiffs

cannot avoid dismissal in an ERISA case by simply alleging facts inconsistent with the plain

language of the governing contract.  *See Pride Hyundai, Inc. v. Chrysler Fin. Co.*, 369 F.3d 603,

616 (1st Cir. 2004) (under Massachusetts law, "where the wording of the contract is

unambiguous, the contract must be enforced according to its terms" (quotation marks omitted));

*Smart v. Gillette*, 70 F.3d 173, 178 (1st Cir. 1995) (same under federal common law).

Plaintiffs' effort (at 14) to dismiss this language as an impermissible fiduciary disclaimer

does not work.  To be sure, "ERISA precludes fiduciaries from contracting away their

responsibilities.  But that does not answer the question of whether [a service provider] has taken

on fiduciary status in the first place."  *Santomenno*, 768 F.3d at 299 (citations omitted).[2]  As to

that question, courts routinely look to trust agreements to determine the roles that the parties

have accorded to the service provider, and, specifically, the scope of a service provider's

discretion.  And courts dismiss claims for lack of fiduciary status where – as here – a trust

agreement establishes that a service provider lacked responsibility for, or discretion over, the

challenged conduct.  *See, e.g.*, *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 24 (1st Cir.

1998) ("Because the trust agreement (coupled with the [named fiduciary's] appointment of [the

investment manager]) unambiguously establishes that the Bank retained no discretionary

authority over the Plan's real estate investments, we hold that the complaint fails to state an

actionable claim [for breach of fiduciary duty].").[3]  Nor is the Delta TA language "boilerplate,"

as Plaintiffs assert.  To the contrary, it is part of an amendment that is addressed exclusively to

---

[2] *See also Chicago Bd. Options Exch., Inc. v. Conn. Gen. Life Ins. Co.*, 713 F.2d 254, 259 (7th Cir. 1983) ("[A]lthough the parties *may decide how much authority to vest in any person*, they may not decide how much liability attaches to the exercise of that authority." (emphasis added)).

[3] *See also McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1004 (8th Cir. 2016) (affirming dismissal for lack of relevant fiduciary status based on service provider's contract); *Columbia Air Servs., Inc. v. Fid. Mgmt. Trust Co.*, No. 07-11344-GAO, 2008 WL 4457861, at *1 (D. Mass. Sept. 30, 2008) (dismissing fiduciary claims against provider where trust agreement demonstrated that Fidelity lacked discretionary authority); *Kling v. Fidelity Mgmt. Trust Co.*, 270 F. Supp. 2d 121, 131 (D. Mass. 2003) (plan documents and trust agreement "exempt Fidelity from fiduciary status"); *Harley v. Bank of New York Mellon*, No. 1:15-CV-1384, 2015 WL 6956564, at *3 (M.D. Pa. Nov. 10, 2015) (rejecting the argument that trust agreement does not define a defendant's fiduciary status and citing several authorities in which courts "have construed the terms of the underlying trust agreement and other related documents to determine the scope of any fiduciary duty owed by a trustee").

the retention of FE, and it sets forth the respective roles of Delta and FE in connection with that specific relationship.

Plaintiffs ignore this unambiguous language of the Delta TA and instead misrepresent a single clause of the Delta TA's "Schedule of Services," which in fact reinforces Fidelity's lack of discretion regarding FE. This section lists "Fidelity's Responsibilities" with respect to various "Investment Services" for the plan, and states, *in its entirety*, "Services provided in accordance with Fidelity's existing agreement with Financial Engines." Delta TA, Schedule A, § 5.23. The fact that Fidelity had an "existing agreement" with FE pursuant to which Fidelity was responsible for performing certain services to facilitate FE's advisory services in no way undercuts the unambiguous language of the Delta TA, which states that it was Delta that appointed FE (§ 5(m)(1)); that said appointment was pursuant to an agreement between Delta and FE (§ 1(tt)); and that Fidelity had "no responsibility" and was precluded from even advising Delta about the selection of such services (§ 2(a)).[4]

Because the Delta TA unambiguously establishes that Delta "appointed Financial Engines" for the Plan, Plaintiffs fail to plausibly allege that Fidelity had fiduciary authority with respect to the Plan's use of FE, and Count I fails.

**B.    Plaintiffs' Fiduciary Claim Concerning Fidelity's FE Compensation Fails as a Matter of Law.**

Plaintiffs' Opposition also does not refute Fidelity's independent basis for dismissal:  that even if Fidelity required plans using Fidelity's recordkeeping system to use FE if they wish to

---

[4] Plaintiffs object to the judicially noticeable documents Fidelity filed regarding PAS-W, Fidelity's competing investment advice product. Opp. at 15-16. Plaintiffs misunderstand the relevance of PAS-W. Fidelity's Motion noted the existence of PAS-W simply to underscore the absurdity of Plaintiffs' allegations that Fidelity undertook a campaign to force its clients to hire its own competitor. The implausibility of this allegation is not reliant on the documents Fidelity filed; a simple Google search would have put Plaintiffs on notice of Fidelity's competing service. In any event, Plaintiff's allegations are entirely refuted by the Delta TA that governs here, to which Plaintiffs could have no objection.

provide investment advice services – and it does not – Fidelity would still not be a fiduciary for that product-design feature.  Courts are clear that a service provider is not acting as a fiduciary when it designs and offers a product, so long as the plan fiduciaries have the option to "reject[] [the service provider's] product and select[] another service provider."  *Santomenno*, 768 F.3d at 295.  Plaintiffs do not allege that Delta lacked the ability to choose another recordkeeper if it did not like the alleged "Fidelity plus FE" package.  Accordingly, even if Fidelity earned fees as a result of packaging FE services with Fidelity recordkeeping, Fidelity cannot be held liable as a fiduciary for those fees because Fidelity is not acting as a fiduciary when it designs the package of services it offers.

Unable to rebut this argument, Plaintiffs point to inapposite authorities in an attempt to argue that Fidelity had fiduciary discretion to "self-determine its compensation" from FE.  Opp. at 11.  Plaintiffs cite three district court cases holding that service providers had fiduciary authority over fees received from the plan in instances where – unlike here – the provider's contract with the plan conferred on the service provider the authority to set the specific rate at which it would be paid.  In *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189, 192 (D. Mass. 2008), the provider's contract gave it "sole discretion" to assess an administrative fee *up to* a "maximum" rate set forth in the contract.  In *Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 931 F. Supp. 2d 296, 304 (D. Mass. 2013), the provider's contract gave it "discretion to set its fee anywhere from 0% to 50%."  In *Golden Star, Inc. v. Mass Mut. Life Ins. Co.*, 22 F. Supp. 3d 72, 80, 81 (D. Mass. 2014), the provider's contract gave it "the discretion to unilaterally set fees" anywhere from 0% to 1.0% of the market value of investments.[5]

But Plaintiffs point to no provision in the Delta TA that gave Fidelity the discretion to set

---

[5] Plaintiffs' out-of-circuit authority presents the same fact pattern.  *See United States v. Glick*, 142 F.3d 520, 523, 527-28 (2d Cir. 1998) (defendant's sub-brokerage arrangement provided it with "unhampered discretion in setting the commission rate").

its own fee, and no such provision exists.  Indeed, the Complaint does not allege that *any*

contract – even the contract between Fidelity and FE – gave Fidelity discretion to set its own fees

in *any* relationship.  To the contrary, Plaintiffs allege that, if a plan wants investment advisory

services, then the plan must use FE, and FE has agreed to pay Fidelity in accordance with a pre-

defined formula.  Compl. ¶¶ 38, 39.  Nothing discretionary is alleged, and thus the fee discretion

cases cited by Plaintiffs are inapplicable.  Furthermore, the fee arrangements between Fidelity

and FE are irrelevant:  Plaintiffs' authorities simply do not speak to the fact pattern here, where

Plaintiffs challenge compensation that Fidelity receives not *from the Plan*, but from FE (another

plan service provider), pursuant to a separate contract with FE.  Plaintiffs provide no legal basis

for such separate contractual arrangement to give rise to any fiduciary authority on Fidelity's part

with respect to the Delta Plan.  Count I should be dismissed on this independent ground.

## II. Plaintiffs' Fiduciary Breach Claim Concerning Fidelity's BrokerageLink Product (Count III) Fails Because a Service Provider Is Not a Fiduciary for the Design of Its Products, and Plaintiff Fleming Lacks Standing To Assert Such a Claim.

The Opposition cannot refute that, under two recent federal appellate court decisions, a

service provider's design of its investment products – expressly including choice of share class –

is not a fiduciary act and thus does not give rise to a claim for breach of fiduciary duty.[6]  Instead,

Plaintiffs argue that this is not a product-design claim because, unlike in *Leimkuehler* and

*Santomenno* where share class selection was part of the product design, share class is not part of

BrokerageLink's product design, but, rather, Fidelity "selects share classes *after* Plaintiffs have

selected a particular mutual fund for purchase."  Opp. at 18 (emphasis in original).  But

Plaintiffs' theory that participants provide only general investment instructions as to investment

---

[6] As discussed in the Moving Brief at 8-12, in *Leimkuehler v. Am. United Life Ins. Co.*, the Seventh Circuit held that "product-design decisions" such as "decid[ing] which mutual funds to include and which share classes of those funds to select" did not make the provider a fiduciary. 713 F.3d 905, 911-12 (7th Cir. 2013).  In *Santomenno*, the Third Circuit rejected the plaintiffs' allegation that the provider's failure to offer the lowest-cost share class of funds in its menu was a fiduciary violation.  768 F.3d at 290-92.

in a mutual fund, and Fidelity then selects the share class of that mutual fund in which to invest, is refuted by the Trust Agreement and is implausible on its face.  Moreover, the only named Plaintiff who utilized BrokerageLink lacks standing to assert this claim because the only discretionary act alleged to be wrongful – Fidelity's selection of a share class *after the plan participant chose the mutual fund to purchase* – never affected her.

###### A.   Dismissal Is Appropriate Under *Leimkuehler* and *Santomenno*.

The Third and Seventh Circuits have recently considered whether a service provider's offering of certain share classes of funds makes it a fiduciary, and both squarely held that such conduct is a "product-design decision[]" that "does not transform" a service provider into a fiduciary.  *Leimkuehler*, 713 F.3d at 911, 912; *accord Santomenno*, 768 F.3d at 295.  Plaintiffs ask this Court to disregard these recent and on-point circuit court authorities, largely on the basis of their interpretation of a ten-year-old district court decision, *Haddock v. Nationwide Fin. Servs. Inc.*, 419 F. Supp. 2d 156, 161, 166 (D. Conn. 2006).  If *Haddock* is read to mean that merely selecting funds (or share classes) to be included in a product offering is sufficient to create fiduciary status, then it is directly contrary to the Third and Seventh Circuits' well-reasoned decisions, as well as the lengthy series of appellate and district court cases on which they rely, holding that where the plan sponsor retains "final authority in deciding whether to accept or reject" a service provider's product, the service provider is not a fiduciary as to that product. *Santomenno*, 768 F.3d at 293; *accord Leimkuehler*, 713 F.3d at 911-12; Mov. Br. at 11-12.[7]

Plaintiffs' other authorities are all inapposite.  In *Tussey v. ABB, Inc.*, the district court reversed course after the opinion cited by Plaintiffs, and held that Fidelity was *not* a fiduciary

---

[7] Plaintiffs suggest (at 19) that *Leimkuehler* and *Santomenno* may no longer be good law in light of 29 C.F.R. § 2550.408b-2.  But Plaintiffs' assertion that these cases pre-date that regulation is false.  The regulation was promulgated in 2012, *see* 77 Fed. Reg. 41,678 (July 16, 2012), and *Leimkuehler* and *Santomenno* are 2013 and 2014 cases.  Moreover, the regulation simply added disclosure requirements to an existing statutory provision.  It does not purport to say anything about whether service providers are fiduciaries as to their product design.

with respect to investment selection.  No. 2:06-CV-04305-NKL, 2012 WL 1113291, at *25 (W.D. Mo. Mar. 31, 2012).  In *Charters*, the court held that a service provider was a fiduciary only because the plan did not have the ultimate authority to "take it or leave it" with respect to the service provider's offering, because, in that case, if the plan were dissatisfied with the provider's choices and wished to terminate, it would be subject to a termination fee.  583 F. Supp. 2d at 199; *see also Santomenno*, 768 F.3d at 295 n.6 (distinguishing *Charters* on this basis and thus "find[ing] *Charters* unavailing").  And *Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, turned on the same inability of the plan to "take it or leave it" with respect to the product offering.  961 F. Supp. 2d 393, 399-400 (D. Conn. 2013).[8]  Nothing in this Complaint in any way suggests Delta lacked the ability to "take it or leave it" when it came to BrokerageLink: Delta could have declined to offer BrokerageLink and allowed participants to choose from the funds in its core lineup, or it could have walked away from Fidelity altogether and found a BrokerageLink-type offering more to its liking.  The law is clear that, where the plan has the ability to "take it or leave it" when it comes to a service provider's product offering, the service provider is not a fiduciary when it is designing that product.

### B.     Plaintiffs Fail to Plausibly Plead Their Theory that Fidelity Selects Share Classes for Participants.

Recognizing that *Leimkuehler* and *Santomenno* are lethal as a matter of law to the viability of Plaintiffs' BrokerageLink claim, the Opposition relies on a purported factual distinction between this case and those authorities, asserting that share class is not part of the design of the BrokerageLink product, but rather that Fidelity exercises discretion to select share classes ***after*** plan participants select a particular mutual fund for purchase. This assertion is

---

[8] *Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.* has nothing at all to do with fund selection and instead involved an insurance company's contractual discretion to unilaterally reduce the rate of return and increase premiums for a group life insurance policy.  805 F.2d 732, 734 (7th Cir. 1986).

refuted by the Trust Agreement and implausible on its face.

*First*, the Delta TA makes plain that participants choose from a menu of specific securities when they elect to invest their plan accounts through BrokerageLink:  The Delta TA states that Fidelity is required "to purchase or sell *individual securities* for Participant BrokerageLink accounts . . . in accordance with investment directions provided by Participants," Delta TA § 5(g) (emphasis added).  And each share class of a mutual fund is an *individual security*, with its own ticker symbol and CUSIP.[9]  Nothing in the Delta TA authorizes Fidelity to choose individual securities (*i.e.*, share classes) for participants.

*Second*, in addition to being inconsistent with the Delta TA, Plaintiffs' theory is implausible.  The notion that a Fidelity employee makes an individual, discretionary decision in each instance that one of hundreds of thousands of plan participants makes a BrokerageLink investment is obvious nonsense.  Such a system would be completely unadministrable.  A complaint should not be sustained where, as here, it requires the court to credit assertions that are at odds with common sense.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Accordingly, this case is indistinguishable from *Leimkuehler* and *Santomenno*, and Count III should be dismissed under Rule 12(b)(6).

### C.   The Complaint's BrokerageLink Claims Should Be Dismissed for the Independent Reason that Plaintiffs Lack Standing To Assert These Claims.

The Complaint's BrokerageLink claims should be dismissed under Rule 12(b)(1) for the

---

[9] *See* Final Rule, Enhanced Disclosure and New Prospectus Delivery Option for Registered Open-End Management Investment Companies, 74 Fed. Reg. 4,546, 4,551 (Jan. 26, 2009) (requiring funds "to disclose the exchange ticker symbol of the fund's shares or, if the prospectus or SAI relate to one or more classes of the fund's shares, adjacent to each such class, the exchange ticker symbol of that class"); Jesse Emspak, GOOG or GOOGL: Which Stock Do You Buy?, Investopedia.com (Mar. 25, 2016), http://www.investopedia.com/articles/markets/052215/goog-or-googl-which-google-should-you-buy.asp; *e.g.*, Form N-1A (each class is a unique security); Edgewood Management LLC, Edgewood Growth Fund: Overview, (last accessed Nov. 3, 2016), http://edgewoodfunds.com/ growth_fund (listing the separate tickers and CUSIPs for the two share classes of the same fund); Morgan Stanley Investment Management, Morgan Stanley Institutional Fund 2Q16 Fact Sheet, available at https://www.morganstanley.com/ im/publication/mutualfund/factcard/fc_us_mf_usreal estate.pdf (listing the separate CUSIPs and tickers for each of the four available share classes).

independent reason that Plaintiff Fleming, the only named Plaintiff who utilized BrokerageLink (Compl. ¶ 21), lacks Article III standing to assert such claims, and the Court therefore lacks jurisdiction to consider them.  The sole basis for the essential element of fiduciary duty – Fidelity's fiduciary status – in connection with BrokerageLink is that Fidelity chose the share class after plan participants selected a particular mutual fund for purchase.  In the absence of that alleged exercise of discretion, it is clear that the choice of which share class to include in the BrokerageLink product is not a fiduciary act.  Fleming lacks standing to assert this claim because, even if it were plausible that Fidelity in some instances chose the share class to acquire after a plan participant decided to invest in a particular mutual fund, that practice never affected *her*, as set forth in the Declaration of Craig Hermansen ("Hermansen Decl.") submitted herewith.

Whether a plaintiff has Article III standing is a "threshold question in every federal case," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), because, where a plaintiff lacks constitutional standing, courts lack subject matter jurisdiction, *see Animal Welfare Inst. v. Martin*, 623 F.3d 19, 25 (1st Cir. 2010).  To satisfy Article III's case and controversy requirement, a plaintiff must establish that she "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct."  *Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 335 (1990) (quotation marks omitted).[10]  Moreover, because it is a "bedrock proposition that a plaintiff must 'be himself among the injured,'" standing must be analyzed "plaintiff-by-plaintiff and claim-by-claim."  *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 733 (1st Cir. 2016).[11]

Even at the pleading stage, the plaintiff bears the burden of establishing standing.  To

---

[10] *See also Merriam v. Demoulas Super Markets, Inc.*, Civ. A. No. 11-10577, 2012 WL 931347, at *3 (D. Mass. Mar. 20, 2012) (dismissing ERISA lawsuit for failure to establish constitutional standing, including injury-in-fact).

[11] It is no answer to say that standing is lacking only with respect to Count III.  *Hochendoner* requires that standing be considered claim by claim.  Moreover, the fact that a suit is brought as a putative class action "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks and citations omitted).

meet this burden, a plaintiff must allege injury resulting from the defendant's conduct.  *See*

*Bennett v. Spear*, 520 U.S. 154, 167-68 (1997).  As the First Circuit has explained, "the plaintiff

bears the burden of establishing sufficient factual matter to plausibly demonstrate [her] standing

to bring the action.  Neither conclusory assertions nor unfounded speculation can supply the

necessary heft."  *Hochendoner*, 823 F.3d at 732 (addressing "threshold" issue of standing *sua

sponte* and affirming dismissal because the complaint lacked "specific information . . . regarding

the harm, if any, that has befallen each individual plaintiff").

A defendant "may contest the court's subject matter jurisdiction by challenging the

allegations in the complaint as insufficient on their face or by . . . challeng[ing] the accuracy of

the pleaded jurisdictional facts," in which case the court must consider and weigh all facts

relevant to a standing challenge at the outset of the litigation.  *Hernandez-Santiago v. Ecolab,

Inc.*, 397 F.3d 30, 33 (1st Cir. 2005); *see also Eggert v. Merrimac Paper Co. Leveraged Emp.

Stock Ownership Plan & Trust*, 311 F. Supp. 2d 245, 247–48 (D. Mass. 2004).  Plaintiffs'

Complaint is insufficient to establish the Court's jurisdiction over Plaintiffs' BrokerageLink

claims both as a matter of pleading *and* as a matter of fact.

Ms. Fleming is the only named Plaintiff who invested in BrokerageLink, yet the

Complaint does not plead any "specific information" about her investments, or Fidelity's role

therein, that demonstrates that she has been "affected 'in a personal and individual way' by the

injurious conduct."  *Hochendoner*, 823 F.3d at 731, 732 (citation omitted).  Specifically, Ms.

Fleming fails to plead any instance in which she selected a mutual fund for purchase through

BrokerageLink and Fidelity then selected the particular share class in which to invest her plan

account.  *See id.* at 732 ("Utterly absent, however, is any allegation linking the alleged

acceleration and contaminant injuries to any specific plaintiff.").

Moreover, Plaintiff cannot establish that she was affected by Fidelity's purported practice of choosing share classes after plan participants selected a particular mutual fund because, as explained in the Hermansen Declaration, Ms. Fleming – and not Fidelity – chose every mutual fund *and share class* each time she made a purchase of a fund that offered more than one share class on BrokerageLink.  Ms. Fleming made all of her mutual fund purchases through Fidelity's online trading system.  Hermansen Decl. ¶¶ 7, 20.  To purchase a mutual fund through BrokerageLink online, Ms. Fleming was required to select each mutual fund *and* share class prior to purchase.  *Id.* ¶¶ 10-21.  In every instance, Ms. Fleming knew exactly which individual security she was purchasing – the mutual fund and the share class – at the time she made her investment decision.  *Id.* ¶ 21.

Because Ms. Fleming herself selected the specific share classes of mutual funds in each instance that she invested through BrokerageLink, she suffered no injury in fact caused by the challenged conduct.  The Court thus lacks jurisdiction over the BrokerageLink claims in Counts III and IV, and these claims should be dismissed.

## III.    Plaintiffs' Prohibited Transaction Claims Should Be Dismissed for Failure to Plead Essential Elements of Those Claims.

Plaintiffs assert that Fidelity's receipt of compensation from FE and in connection with BrokerageLink violated ERISA's prohibited transaction rules that apply to fiduciaries (§ 406(b)(1) and (3) (Counts I, III)), and to a plan's transactions with non-fiduciary parties-in-interest (§ 406(a)(1) (Counts II, IV)).  Plaintiffs fail to plead essential elements of both claims.

### A.    Plaintiffs' Fiduciary Prohibited Transaction Claims Under § 406(b) (Counts I and III) Fail Because Fidelity Is Not a Fiduciary as to the Challenged Conduct.

The prohibited transaction claims asserted in Counts I and III fail for the same reason that the breach of fiduciary claims asserted in those counts fail – because, as a matter of law, Fidelity was not acting as a fiduciary when it engaged in the conduct complained of.  *See supra* pp. 2-10.

13

The prohibited transaction claims asserted in Counts I and III are brought under section 406(b), [12] which Plaintiffs concede in their Complaint and in their Opposition requires a viable allegation of fiduciary status. *See* Compl. ¶¶ 62, 63, 74, 75; Opp. at 20, 24; 29 U.S.C. § 1106(b) ("Transactions between plan and fiduciary"). The Opposition's passing reference (at 20) to Fidelity's role as "trustee for the Delta Plan" does not bring Fidelity within the scope of § 406(b)'s prohibitions because Plaintiffs must plead that Fidelity was acting as a fiduciary when it engaged in the conduct complained of – when it received the payments from FE and/or BrokerageLink, which Plaintiffs claim were in violation of § 406(b)'s prohibitions on self-dealing and kick-backs. *See Pegram*, 530 U.S. at 226 (2000) (defendant must be "acting as a fiduciary . . . when taking the action subject to complaint"). Indeed, the Opposition concedes that Plaintiffs' § 406(b) claims hinge on their assertion that Fidelity "engag[ed] Financial Engines" (Opp. at 22) and was a fiduciary for "selecting" BrokerageLink share classes (Opp. at 24). But, as discussed above, the Delta TA is conclusive that Delta, and not Fidelity, chose FE and BrokerageLink for the Plan, and the share classes in BrokerageLink are a product-design feature as to which Fidelity does not act in a fiduciary capacity. *See Danza v. Fid. Mgmt. Trust Co.*, 533 F. App'x 120, 126 (3d Cir. 2013) (dismissing 406(b) claim for failure to allege that provider was a fiduciary as to the challenged conduct). [13] Accordingly, all of Plaintiffs' § 406(b) claims fail for the same reasons that its fiduciary claims discussed in Sections I and II fail. [14]

---

[12] While the Complaint also alleges a violation of section 406(b) in Count II, that allegation is not addressed in Plaintiffs' Opposition and hence is waived. Regardless, any such allegation would fail for the same reason that section 406(b) claims fail under Counts I and III.

[13] The obvious overreaching of Plaintiffs' § 406(b) interpretation is laid bare on page 25 of the Opposition, which explains that, under Plaintiffs' interpretation, even ordinary revenue sharing is *prohibited* by ERISA. But courts have frequently ruled that revenue sharing is a commonplace practice permitted under the law, *e.g.*, *Leimkuehler*, 713 F.3d at 909, as has the Department of Labor, *see* U.S. Dep't of Labor, Field Assistance Bulletin No. 2012-02R (July 30, 2012) (discussing disclosures required for permissible revenue sharing).

[14] Plaintiffs' authorities do not rebut the fact that Fidelity is not a fiduciary. *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209 (2d Cir. 1987), involved a *fiduciary* investment adviser who received payments for itself as a result of its

Plaintiffs' § 406(b)(1) claim – argued (at 20-21) only with respect to Count I – fails for the additional reason that any transaction covered by § 406(b)(1) must involve "assets of the plan." 29 U.S.C. § 1106(b)(1).  Plaintiffs concede (at 21) that the First Circuit's recent decision in *In re Fidelity ERISA Float Litigation* addresses such a claim, and requires Plaintiffs to plead that Fidelity "deal[t] with the assets of the plan."  Opp. at 21.  According to the First Circuit, payments that "do[] not go, and [are] not intended to go, to the plan itself" are not plan assets as a matter of law.  *See In re Fidelity ERISA Float Litig.*, 829 F.3d 55, 60 (1st Cir. 2016).  Plaintiffs offer no argument to the contrary as to the payments that FE and BrokerageLink mutual funds make *to Fidelity*, nor could they.  Plaintiffs provide no factual or legal basis to suggest that the Plan is the owner of monies that resided in mutual fund and FE accounts before they were paid to Fidelity, regardless of whether some portion of those monies may have initially derived from the Plan.  Such a contention is directly at odds with *Float*.

**B.    Plaintiffs' Non-Fiduciary Prohibited Transaction Claims Under § 406(a)(1) (Counts II and IV) Fail as a Matter of Law.**

Both Counts II and IV are premised on violations of ERISA § 406(a).  Count II's demand for equitable relief requires there to be an underlying violation of § 406(a),[15] and Count IV's demand for actual damages is premised entirely on § 406(a).  But Plaintiffs' allegations omit essential elements of a § 406(a) claim.

Most fundamentally, a plan must be a party to a transaction in order for that transaction to be "prohibited" under § 406.  As stated by the Third, Seventh, and Ninth Circuits, "Section 406(a) prohibits transactions between the plan and a party in interest."  *Danza*, 533 F. App'x at

---

investment of plan assets.  And as discussed *supra*, p. 8, *Haddock* is directly at odds with more recent *circuit court precedent* on this issue.

[15] Count II also relies on an underlying violation of § 406(b), but, as noted above, *see* fn.13, that argument has been waived and, in any event, there is no claim stated under § 406(b) in the absence of a viable claim of fiduciary status, which is lacking here.

125; *Keach v. US Trust Co.*, 419 F.3d 626, 635 (7th Cir. 2005)("Section 406 of ERISA prohibits a fiduciary of an ERISA plan from causing the plan to enter into certain transactions with a party in interest."); *Patelco Credit Union v. Sahni*, 262 F.3d 897, 910 (9th Cir. 2001) ("29 U.S.C. § 1106(a) prohibits fiduciaries from causing the plan to engage in specified transactions with parties in interest . . . ."); *see also Skin Pathology Assocs., Inc. v. Morgan Stanley & Co. Inc.*, 27 F. Supp. 3d 371, 376 (S.D.N.Y. 2014) (dismissing Section 406(a) claim based on allegations of revenue sharing between a plan's recordkeeper and a party in interest and holding that "it would make no sense for a statute to impose a duty on a fiduciary to stop a transaction over which it has no control").  As Fidelity explained in its Moving Brief (at 21), Plaintiffs here do not challenge any transactions between the Delta Plan and Fidelity; they instead challenge Fidelity's transactions with FE and with the mutual funds that are offered in BrokerageLink; Plaintiffs' Opposition failed to provide any rebuttal to this argument.

The Third Circuit explained why § 406(a) is concerned only with transactions to which the Plan is a party:  "Prohibited Section 406(a) transactions between a plan and a party in interest are those 'commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length.'"  *Danza*, 533 F. App'x at 125 (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996)).  No such risk is presented by the arrangements between Fidelity and FE or the arrangements between Fidelity and the BrokerageLink mutual funds.  Those transactions were not "struck with plan insiders."  The allegation that FE has contracted to pay Fidelity a portion of what FE receives from the Plan does not alter the analysis, because there is no allegation that this is an arrangement in which the Plan has any involvement.  Indeed, the Complaint alleges the contrary – that the FE/Fidelity relationship is foisted on the Plan, and that the Plan has nothing to say about it.  Accordingly, as

16

stated in *Danza*, "[n]egotiation between such unaffiliated parties does not fall into the category

of transactions that Section 406(a) was meant to prevent." *Id.* at 125. Section 406(a) prohibits

plan fiduciaries from causing their plans to enter into deals with plan insiders, "presumably not at

arm's length." *Lockheed*, 517 U.S. at 893. No such concern is present here. Consequently, these

claims are subject to dismissal for failure to plead the essential element of a transaction between

a party in interest and a plan.

As discussed below, the complaint also omits essential elements of the subsections of

§406(a) that are pleaded in Counts II and IV respectively. However, before even reaching the

additional elements required by each subsection, this claim is subject to dismissal for failure to

plead the essential element of a transaction between a party in interest and a plan.

### 1.    Plaintiffs' Non-Fiduciary Claim in Count II Fails.

Section 406(a)(1)(D)[16] prohibits a plan fiduciary from causing the plan to engage in a

transaction that involves transferring "plan assets" to a party in interest. The payments that

Plaintiffs complain about in Count II are payments from FE to Fidelity. (Count II addresses only

FE, not BrokerageLink.). Monies paid *from FE* are not *plan assets*. Plaintiffs take the position

that, because there are monies in FE's bank account that came from the Plan, monies that are

paid to Fidelity from that same bank account are also plan assets. Such a vastly elastic definition

of "plan asset" was directly rejected by the First Circuit in *In re Fidelity ERISA Float Litig.*, 29

F.3d at 60. Plaintiffs fail to even address this binding authority, instead relying solely on a DOL

advisory opinion that supports *Fidelity's* position, not Plaintiffs'. Opp. at 23. The advisory

opinion makes clear that, to be a plan asset, the plan must maintain a "beneficial ownership

---

[16] The Opposition asserts that Count II pleads a claim related to Fidelity's FE compensation under § 406(a)(1)(D), although such statutory sub-provision is not actually identified in the Complaint. Opp. at 23; Mov. Br. at 20, n.11 (noting pleading deficiency). Even assuming that Count II includes such a claim, Plaintiffs have nonetheless failed to state a claim under this provision.

interest" in the asset.  DOL Adv. Op. 2013-13A (July 3, 2013).  Here, there is no "ordinary

notion[] of property rights," *id.*, much less logic, under which the Delta Plan maintains an

ownership interest in FE's assets.

Plaintiffs' § 406(a)(1)(D) claim concerning Fidelity's compensation from FE also is

nonsensical.  FE was not a fiduciary until it entered into a contract to provide investment advice

services to the plan, and thus it could not logically have been a fiduciary that "cause[d] the plan

to engage in a transaction."  ERISA § 406(a)(1)(D) ("A fiduciary with respect to a plan shall not

cause the plan to engage in a [prohibited] transaction . . . ."); *cf. Danza*, 533 F. App'x at 126

(dismissing claim because, "[w]hile Fidelity is currently a party in interest as a service provider

to the plan," it "was not a party in interest at the time the Trust Agreement was signed.").

### 2.      Plaintiffs' Non-Fiduciary Claim in Count IV Fails.

Count IV alleges that Fidelity's receipt of compensation from FE or BrokerageLink

mutual funds violates ERISA § 406(a)(1)(C).  The Opposition abandons any such claim as to FE,

stating only that "the engagement of Fidelity to provide services to the Plans through

BrokerageLink is prohibited by ERISA § 406(a)."  Opp. at 26.  And the Opposition does not

salvage the Complaint's failure to plead a claim under § 406(a)(1)(C) as to BrokerageLink.

*First*, Plaintiffs fail to plead an essential element of a § 406(a)(1)(C) prohibited

transaction.  ERISA § 406(a)(1)(C) prohibits *a plan fiduciary* from causing the plan to engage in

a transaction with a party in interest.  29 U.S.C. § 1106(a)(1)(C).  Plaintiffs must therefore

identify the "fiduciary" that "cause[d] the plan" to enter into the insider prohibited transaction.

*Id.*  A failure to identify the fiduciary that breached the duty imposed by § 406(a) is a failure to

allege a violation of § 406(a) altogether.  *Lockheed*, 517 U.S. at 888-89.  But the Complaint is

devoid of any allegation that any Delta fiduciary was the cause of any transaction that is

prohibited by ERISA, or, indeed, that any Delta fiduciary caused anything unlawful to occur.

18

The Opposition misconstrues Fidelity's argument as insisting that Plaintiffs must name the Delta Plan fiduciaries as defendants in the litigation.  That is not Fidelity's argument.  Even if Plaintiffs elect not to include the plan's primary decision-maker in the litigation, they must still plead the elements of their claim, including that there is a fiduciary that caused the plan to engage in a transaction that violates ERISA.  Failure to do so is a failure to state a claim.

*Second*, Plaintiffs' assertion that Fidelity is improperly relying on an "affirmative defense" in its Motion also misses the mark.  Opp. at 27.  Fidelity has not moved to dismiss based on the statutory exemption to ERISA § 406(a)(1)(C) found at ERISA § 408(b)(2).[17]

Finally, the Opposition also does not refute that "ERISA does not permit a civil suit for money damages against non-fiduciaries."  *Reich v. Rowe*, 20 F.3d 25, 28 (1st Cir. 1994).  Plaintiffs are therefore ineligible for the "actual damages" that they seek in Count IV.  Compl. ¶ 86; Mov. Br. at 22.  Indeed, Plaintiffs concede the point, when they attempt in the Opposition to recast their Count IV as a claim for "disgorgement" under ERISA § 502(a)(3), Opp. at 26,[18] although Count IV does not include any reference to disgorgement or to § 502(a)(3).  But Plaintiffs cannot amend their Complaint through their Opposition.  *Luthy v. Proulx*, 464 F. Supp. 2d 69, 74 n.25 (D. Mass. 2006) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)).

In any event, even if Plaintiffs had pleaded a claim for disgorgement under ERISA § 502(a)(3), which they have not, they would not be entitled to such equitable relief.  Plaintiffs would need to allege that the allegedly excessive compensation they seek from Fidelity "c[an]

---

[17] Plaintiffs' citation to *Vander Luitgaren v. Sun Life Assurance Co. of Can.,* 966 F. Supp. 2d 59, 68-69 (D. Mass. 2012) and *Edmonson v. Lincoln Nat'l Life Ins. Co.,* 777 F. Supp. 2d 869 (E.D. Pa. 2011) in support of their § 406(a) claim, Opp. at 26, is particularly baffling as neither case involved such a claim.  Moreover, each of these district court cases was superseded by an appeals court decision, both of which declined to hold a provider liable as a fiduciary.

[18] Fidelity presumes that the Opposition's citation to "ERISA § 501(a)(3)" was in error, and that Plaintiffs intended to identify § 502(a)(3), although such remedial provision is not pleaded in Count IV.

clearly be traced to particular funds or property" in Fidelity's possession.  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002); *see also Nechis v. Oxford Health Plans, Inc.*, 328 F. Supp. 2d 469, 478 (S.D.N.Y. 2004) (dismissing § 502(a)(3) claim for failure to allege that assets sought "exist in a separately identifiable account").  Plaintiffs do not, nor could they, allege that any of the money they seek to disgorge can be traced to particular funds or property in Fidelity's possession.

Each of the foregoing arguments demonstrates that the Complaint fails to state a claim under § 406(a) and under the specific subsections of § 406(a) invoked here.

## CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in Fidelity's Moving Brief, the Complaint should be dismissed.


Dated:  November 3, 2016                              Respectfully Submitted,

/s/ James R. Carroll                                      /s/ Alison V. Douglass
James R. Carroll (BBO #554426)              Alison V. Douglass (BBO #646861)
Michael S. Hines (BBO #653943)             Jaime A. Santos (BBO #689946)
SKADDEN, ARPS, SLATE                            GOODWIN PROCTER LLP
MEAGHER & FLOM LLP                           100 Northern Avenue
500 Boylston Street                                     Boston, MA 02210
Boston, Massachusetts 02116                     (617) 570-1000
(617) 573-4800                                            adouglass@goodwinlaw.com
james.carroll@skadden.com                        jsantos@goodwinlaw.com
michael.hines@skadden.com

*Attorneys for Defendants*

20

## **CERTIFICATE OF SERVICE**

I, Alison V. Douglass, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 3, 2016.

/s/ Alison V. Douglass

86066233