UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHERINE FLEMING, EDWARD R. HADUCK, and VICTORIA WENDEL, <br><br> Plaintiffs, <br><br> v. <br><br> FIDELITY MANAGEMENT TRUST COMPANY and FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC., <br><br> Defendants. | Civil Action No. 16-cv-10918-ADB |

### MEMORANDUM AND ORDER ON MOTION TO VACATE AND AMEND JUDGMENT AND FOR LEAVE TO FILE AMENDED COMPLAINT

BURROUGHS, D.J.

On September 22, 2017, the Court granted Defendants' motion to dismiss Plaintiffs' putative class action asserting violations of the Employee Retirement Income Security Act of 1974 ("ERISA") for failure to state a claim. See Fleming v. Fidelity Mgmt. Trust Co., No. 16-cv-10918-ADB, 2017 WL 4225624 (D. Mass. Sept. 22, 2017), ECF No. 54 ("MTD Order"). On October 20, 2017, Plaintiffs filed the instant motion pursuant to Fed. R. Civ. P. 15(a), 59(e), and/or 60(b) to vacate and amend the judgment and for leave to file an amended complaint. [ECF No. 56]. For the reasons stated herein, the motion is DENIED.

I. BACKGROUND

The Court assumes the parties' familiarity with the MTD Order and therefore provides only a brief summary of that decision. Plaintiffs are individual participants within the meaning of ERISA, 29 U.S.C. § 1002(7), in the Delta Family-Care Savings Plan ("Plan"). The Plan qualifies

1

under ERISA as both an employee pension benefit plan, 29 U.S.C. § 1002(2)(A), and an individual account plan, 29 U.S.C. § 1002(34). Defendants Fidelity Management Trust Company ("FMTC") and Fidelity Investments Institutional Operations Company, Inc. ("FIIOC") were hired to provide certain services to the Plan. As trustee of the Plan, FMTC holds the Plan's investment assets and executes investment transactions, whereas FIIOC, a wholly owned subsidiary of FMTC, provides trust services, record-keeping, and information management services to the Plan. The assets of the Plan are held in and invested through a Master Trust, which is controlled in all material respects by a Master Trust Agreement involving the Plan sponsor (Delta Air Lines, Inc.), the named fiduciary (the Delta Air Lines, Inc., Benefit Funds Investment Committee), the Plan administrator (the Administrative Committee of Delta Air Lines, Inc.), and the trustee (FMTC).

The original complaint essentially asserted two theories of wrongdoing with respect to the Plan. First, it challenged the relationship between Defendants and a third party, Financial Engines Advisors, LLC ("FE"), which provides investment advice services to individual Plan participants for a fee. Plaintiffs asserted that Defendants and FE have agreed to an improper "pay to play" arrangement in that FE, in exchange for being included as the Plan's investment advisor, agreed to pay Defendants a significant percentage of the fees that FE collects from individual Plan investors. According to Plaintiffs, Defendants hired FE and controlled the negotiation of the terms and conditions under which FE would provide its services to the Plan participants, including the fee-sharing arrangement. This arrangement was alleged to be unrelated to any substantial services performed by Defendants and purportedly inflated the cost of investment advice for Plan participants in violation of the fiduciary responsibility and prohibited transaction provisions of ERISA, 29 U.S.C. §§ 1104, 1106.

The Court recognized that Plaintiffs' theory was premised on the notion that Defendants, rather than Delta, hired or selected FE, but concluded that the Master Trust Agreement "compels the conclusion that Delta, not Defendants, exercised final authority or control over the selection or hiring of FE." MTD Order at 14. Moreover, if Delta believed that the fee-sharing arrangement between Defendants and FE wrongfully inflated the cost of investment advice services, the Court determined that Delta was free to decline to hire FE or to terminate its relationship with both Defendants and FE. Insofar as the original complaint challenged the amount of the fees that Defendants collect from FE, the Court held that Defendants were not acting in a fiduciary capacity when they negotiated with plan sponsors for their own compensation, finding it "difficult to see how a service provider could be an ERISA fiduciary when it negotiates a fixed rate of compensation from an entity other than the Plan, as Plaintiffs allege here," particularly given that the Complaint did not allege that "once FE was hired, Defendants retained any authority or control over the rate of compensation it would receive from FE." Id. at 15−16.

Second, the original complaint attacked the portal, "BrokerageLink," through which individual Plan participants may invest their savings on a self-directed basis. BrokerageLink allowed individuals to purchase an array of securities, including a selection of mutual funds that are not included among the Plan's designated investment alternatives. Plaintiffs took issue with the specific classes of mutual fund shares made available for purchase through BrokerageLink. The original complaint alleged that Defendants breached their fiduciary duty to the Plan by selecting only higher-cost share classes (which typically include revenue-sharing payments made to parties who distribute the shares or provide other services) to be available through BrokerageLink, while excluding lower-cost share classes, thereby maximizing their revenue-sharing payments at the expense of Plan participants.

The Court accepted as true Plaintiffs' assertion that Defendants were responsible for deciding which share classes of mutual funds would be made available through BrokerageLink but found this "product design" decision to be wholly distinct from the decision to make BrokerageLink available to individual Plan participants, which the Master Trust Agreement showed rested solely with Delta. Id. at 10. The Master Trust Agreement made clear that the Delta entities, not Defendants, retained control over whether BrokerageLink—and by extension the classes of mutual fund shares offered through it—was available to Plan participants. The Court further noted that there was no suggestion in the original complaint that Delta lacked the authority or ability exclude BrokerageLink as an offering if it determined that the share classes available through BrokerageLink were unsuitable for Plan participants. Accordingly, Defendants did not exercise the type of authority or control over the decision to include BrokerageLink in the Plan that would give rise to ERISA liability.[1]

## II. DISCUSSION

Plaintiffs now move to vacate the order of dismissal and to alter it to be without prejudice, such that Plaintiffs may file their proposed amended complaint [ECF Nos. 56, 57-1]. Defendants oppose the motion on the grounds that Plaintiffs fail to meet their burden to vacate and amend the judgment and that their new allegations do not cure the deficiencies of the original complaint.

---

[1] The Court also dismissed Plaintiffs' claims that Defendants violated ERISA by receiving excessive and unreasonable compensation from fees collected from the mutual funds that Plan participants acquired through BrokerageLink and the fees that FE shares with Defendants through the revenue-sharing arrangement. MTD Order at 16−18. Plaintiffs' request for equitable relief was likewise dismissed, because none of the underlying claims of ERISA violations were found to be viable. Id. at 19.

The parties agree that Plaintiffs must satisfy the standards under Federal Rules of Civil Procedure 59(e) and/or 60(b), as well as Rule 15, to obtain the requested relief. "Ordinarily, Rule 15(a) governs a motion to amend a complaint. That rule directs that '[t]he court should freely give leave [to amend] when justice so requires.'" Fisher v. Kadant, Inc., 589 F.3d 505, 508 (1st Cir. 2009) (quoting Fed. R. Civ. P. 15(a)(2)). "If, however, a motion to amend is filed after the entry of judgment, the district court lacks authority to consider the motion under Rule 15(a) unless and until the judgment is set aside." Id. (citing Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006)). "As long as the judgment remains in effect, Rule 15(a) is inapposite." Id. at 508−09. Here, Plaintiffs filed the instant motion on October 20, 2017, after the entry of judgment on September 22, 2017. [ECF Nos. 54, 55, 56]. For the purposes of deciding this motion, it is of no consequence that Plaintiffs included in their opposition to the motion to dismiss a one-sentence request for leave to amend the complaint [ECF No. 28 at 32], contingent upon the court dismissing the case. See Fisher, 589 F.3d at 510 ("We hold that a passing request for contingent leave to file an amended complaint, made in an opposition to a motion to dismiss, is insufficient, in and of itself, to bring a post-judgment motion for reconsideration within the orbit of Rule 15(a)."); Gray v. Evercore Restructuring LLC, 544 F.3d 320, 327 (1st Cir. 2008) (contingent request for leave to amend in opposition brief "does not constitute a motion to amend a complaint"). The first question, then, is whether the judgment may be set aside under, "say, Rule 59(e) or Rule 60(b)." Fisher, 589 F.3d at 509.

Plaintiffs filed the instant motion within the 28-day time period prescribed by Rule 59(e). Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."). Under Rule 59(e), "relief is granted sparingly, and only when 'the original judgment evidenced a manifest error of law, if there is newly discovered evidence,

5

or in certain other narrow situations.'" Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014) (quoting Global Naps, Inc. v. Verizon New England, Inc., 489 F.3d 13, 25 (1st Cir. 2007)). For instance, "a motion for reconsideration should be granted if the court 'has patently misunderstood a party . . . or has made an error not of reasoning but apprehension.'" Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 82 (1st Cir. 2008). In "rare" circumstances, district courts in this Circuit have recognized that a Rule 59(e) motion may be granted "to prevent manifest injustice." Trinidad v. City of Boston, No. 07-cv-11679-DPW, 2011 WL 915338, at *3 (D. Mass. Mar. 15, 2011).

Alternatively, Plaintiffs seek relief under Rule 60(b), which provides that "the court may relieve a party . . . from a final judgment, order, or proceeding," for, as relevant here, "newly discovered evidence" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(2), (6). Relief under Rule 60(b) is likewise "extraordinary in nature," Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002), and should be granted "sparingly," Cintron-Lorenzo v. Departamento de Asuntos del Consumidor, 312 F.3d 522, 527 (1st Cir. 2002) (citation omitted), as "[s]uccess under [Rule 60(b)] requires more than merely casting doubt on the correctness of the underlying judgment." Fisher, 589 F.3d at 512. Plaintiffs, as the moving parties, bear the burden of making the requisite showing under Rule 59(e) or Rule 60(b). See Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005); Fisher, 589 F.3d at 512.

Here, Plaintiffs claim with minimal explanation that after issuance of the MTD Order, they "worked diligently to find and bring to light the facts that show this case satisfies the pleading standard" and "determined that there was evidence that could address the Court's concerns about the original Complaint." [ECF No. 57 at 4−5]. Yet, they also claim that the Court identified missing allegations that "Plaintiffs did not think needed to be pled—not because the

facts did not support the allegations, but because Plaintiffs understood the law not to require them." Id. at 7−8. Plaintiffs further specify that they still believe their original allegations were adequate but nonetheless are attempting to address the Court's concerns in the proposed amended complaint. Id. at 8.

Plaintiffs' request for the extraordinary relief afforded by Rule 59(e) and Rule 60(b) amounts to an assertion that they can plead sufficient allegations and could have done so at the outset or during the pendency of the motion to dismiss. Instead of doing so prior to the entry of judgment, however, Plaintiffs chose to wait and see how their original complaint fared, thereby unduly delaying an appropriate request for leave to amend. In Kader v. Sarepta Therapeutics, Inc., 887 F.3d 48, 61 (1st Cir. 2018), the First Circuit recently affirmed this Court's denial of leave to amend, even assuming the proposed amended complaint was not futile, where the plaintiffs "waited for the [c]ourt's ruling on the [m]otion to [d]ismiss" for three months after discovering the new information. The Kader plaintiffs' arguments in support of leave to amend similarly focused "on their subjective belief in the strength of the [operative complaint] and on minimizing the three months during which they could have moved for leave to amend," which the First Circuit found "unmov[ing]" as "the fact remain[ed] that despite having three months to do so, the [p]laintiffs did not move to amend until after the district court dismissed the [operative complaint]." Id.; see ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 57 (1st Cir. 2008) (affirming denial of leave to amend post-judgment where defendants' motion to dismiss identified deficiencies in complaint and plaintiffs "could have moved to amend then, but did not"). As the First Circuit has repeatedly stated, "Plaintiffs may not, having the needed information, deliberately wait in the wings" to see whether the court would hold that the operative complaint was insufficient. Advest, Inc., 512 F.3d at 57; see Fire & Police Pension

Ass'n of Colorado v. Abiomed, Inc., 778 F.3d 228, 247 (1st Cir. 2015) (discouraging "practice of seeking leave to amend after the case has been dismissed," particularly where "plaintiffs were put on notice of the deficiencies in the complaint by the motion to dismiss"); Kader, 887 F.3d at 61 (First Circuit has "explicitly condemned a 'wait and see' approach to pleading").

Moreover, Plaintiffs fail to show that the facts and evidence that purportedly address the deficiencies in the original complaint were not reasonably available prior to the entry of judgment. This is particularly true given that the motion to dismiss identified the relevant deficiencies and that over a year passed between the filing of the motion to dismiss and its resolution.[2] See Karak, 288 F.3d at 19−20 ("[A] party who seeks relief from a judgment based on newly discovered evidence must, at the very least, offer a convincing explanation as to why he could not have proffered the crucial evidence at an earlier stage of the proceedings."); see also United States v. Depuy Orthopaedics, Inc., No. 12-10897-FDS, 2016 WL 1430008, at *2 (D. Mass. Apr. 11, 2016), aff'd, 865 F.3d 29 (1st Cir. 2017) (motion for reconsideration "should not be used to 'advance a new argument that could (and should) have been presented prior to the district court's original ruling.'" (quoting Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003))). While taking the position that the original complaint was well-pleaded, Plaintiffs do not otherwise attempt to demonstrate a manifest error of law, nor do they provide any basis for the Court to accept their "wait and see" approach as one of the rare circumstances where relief is

---

[2] As Defendants note in their opposition [ECF No. 58 at 11−12], counsel for Plaintiffs in this case also serve as plaintiffs' counsel in a similar action in which the original complaint was dismissed and plaintiffs sought leave to amend on July 31, 2017 (approximately two months prior to the issuance of the MTD Order), adding the same or similar allegations with respect to FE that are newly alleged here. See Patrico v. Voya Fin. Inc., No. 16-cv-7070-LGS (S.D.N.Y. July 31, 2017), ECF Nos. 74, 74-1. Although the Court need not rely on Plaintiffs' counsel's involvement in Patrico, this is another indication that Plaintiffs were clearly on notice of the deficiencies in the complaint when choosing to wait for the Court to issue the MTD Order before seeking leave to amend.

warranted to avoid a manifest injustice or under Rule 60(b)(6)'s catch-all provision.[3]

In their reply brief, Plaintiffs first argue that it would be a manifest injustice to deny Plaintiffs the opportunity to amend the complaint, at least once, in light of their new allegations, the importance of the substantive issues to Plaintiffs and the putative class, and "the complexity inherent in ERISA litigation." [ECF No. 61 at 3]. As discussed above, though, Plaintiffs had notice and ample opportunity to request leave to amend during the pendency of the motion to dismiss. It is not the denial of the instant motion that deprives Plaintiffs of the opportunity to amend but their strategic choice to go all-in on their original complaint. Denial of the motion to vacate and amend the judgment therefore presents no manifest injustice or other exceptional circumstances. See ACA Fin. Guar. Corp., 512 F.3d at 57 ("It is black-letter law that '[r]egardless of the context, the longer a plaintiff delays, the more likely [a] motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.'" (quoting Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004))).

Accordingly, in the absence of newly discovered evidence, a manifest legal error, or other exceptional circumstances, Plaintiffs have failed to meet their burden under Rule 59(e) or Rule

---

[3] Plaintiffs' reference to Groden v. N&D Trans. Co., 866 F.3d 22, 26 (1st Cir. 2017) for the application of Rule 60(b)(6) is inapposite. The appeal in that case stemmed from the district court's alleged misinterpretation of ERISA law and turned on the legal question of whether plaintiffs' claims gave rise to federal subject-matter jurisdiction. Here, Plaintiffs have not shown (or attempted to show) that the Court committed a manifest error of law, only that the proposed amended complaint cures the infirmities of the original complaint. The only case that Plaintiffs cite for seeking relief to prevent a manifest injustice, Trinidad v. City of Boston, No. 07-cv-11679-DPW, 2011 WL 915338, at *3 (D. Mass. Mar. 15, 2011), involved a plaintiff who had been unfairly prejudiced in the original judgment by her attorney's malfeasance. No similar circumstances are present here; the decision not to seek leave in a timelier fashion was Plaintiffs' strategic choice.

60(b).[4]

## III. CONCLUSION

For the reasons stated herein, the motion to vacate and amend the judgment, and for leave to file an amended complaint [ECF No. 56] is <u>DENIED</u>.

**SO ORDERED.**

May 3, 2018
/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE

---

[4] Moreover, Plaintiffs' new allegations are immaterial or, at the very least, could have been alleged in the original complaint or any time after the filing of the motion to dismiss. With respect to the BrokerageLink theory, the proposed amended complaint contains allegations that Defendants "had unfettered, unilateral discretion and control over which mutual funds, and, as relevant here, which share classes of mutual funds, would be offered to the Plans' participants through BrokerageLink," and had "unilateral responsibility for and control over the ongoing operation of the BrokerageLink program." [ECF Nos. 57 at 4; 57-1 at ¶¶ 41, 46]. Because the Court in the MTD Order already accepted as true Plaintiffs' assertion that Defendants were responsible for deciding which share classes of mutual funds would be made available through BrokerageLink, this new allegation does not resolve the deficiency or address the contrary language of the Master Trust Agreement. As to the FE allegations, Plaintiffs appear to tailor their new allegations to the theory discussed in <u>Hecker v. Deere & Co.</u>, 556 F.3d 575, 583−584 (7th Cir. 2009), and applied in <u>Chendes v. Xerox HR Solutions, LLC</u>, No. 16–13980, 2017 WL 4698970, at *5−6 (E.D. Mich. Oct. 19, 2017). Defendants cited <u>Hecker</u> in their motion to dismiss and Plaintiffs addressed it in their opposition. The <u>Hecker</u> court recognized the argument that "[the defendant] exercised de facto control over the selection of the funds and [the employer] rubber-stamped its recommendations," but held the complaint in that case did not sufficiently allege de facto control, only that the defendant "played a role in the selection of investment options." <u>Id.</u> Thus, this argument and any allegations in support of it were available to Plaintiffs long before the issuance of the MTD Order. Furthermore, the ruling from at least one court faced with a similar proposed amended complaint suggests that Plaintiffs' new allegations concerning FE would nonetheless be futile. See <u>Patrico v. Voya Fin., Inc.</u>, No. 16-cv-7070-LGS, 2018 WL 1319028, at *1−5 (S.D.N.Y. Mar. 13, 2018), <u>appeal filed</u>, No. 18−1057 (2d Cir. Apr. 12, 2018) (proposed amended complaint "elaborates on [d]efendants' conduct alleged in the dismissed [c]omplaint, but the gravamen of [p]laintiff's claims is unchanged."). Ultimately, Plaintiffs unduly delayed seeking leave to amend their complaint only to add allegations and arguments that could and should have been raised at the outset, or at any point during the substantial period of time between the filing and resolution of the motion to dismiss.